

SEALED

**ORIGINAL**

BY ORDER OF THE COURT

OF COUNSEL:

DAVIS LEVIN LIVINGSTON GRANDE

**FILED IN CAMERA AND
UNDER SEAL PURSUANT
TO 31 U.S.C. § 3730(b)(2)**

THOMAS R. GRANDE          3954-0
851 Fort Street, 4th Floor
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500
Facsimile:    (808) 545-7802
Email: tgrande@davislevin.com

UNSEALED BY ORDER OF THE COURT

DATE: OCT 2 5 2006

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

PRICE, OKAMOTO, HIMENO & LUM

NOV 1 8 2003

WARREN PRICE III          1212-0
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Telephone:  (808) 538-1113
Facsimile:    (808) 533-0549
Email: wprice@pohlhawaii.com

at ___ o'clock and ___ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

Attorneys  for *Qui Tam* Relator/Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA, e*x rel*.
MARIA VILLADARES KADZIELAWA,

                Relator/Plaintiff,

      vs.

KAISER FOUNDATION HOSPITALS and
KAISER FOUNDATION HEALTH PLAN,
INC.,

              Defendants.

CIVIL NO. **CV03-00631 DAE** LEK
(Other Civil Action/*Qui Tam*)

**COMPLAINT; DEMAND FOR JURY
TRIAL AND SUMMONS TO ANSWER
COMPLAINT**



<u>COMPLAINT</u>

*Qui Tam* Relator/Plaintiff Maria Villadares Kadzielawa, on behalf of the United States of America, through her attorneys, DAVIS LEVIN LIVINGSTON GRANDE and PRICE, OKAMOTO, HIMENO & LUM, files this complaint against Defendants KAISER FOUNDATION HOSPITALS and KAISER FOUNDATION HEALTH PLAN, INC. and alleges follows:

## I. INTRODUCTION

1.    In this case, Defendants KAISER FOUNDATION HOSPITALS and KAISER FOUNDATION HEALTH PLAN, INC., (collectively "KAISER") engaged in a knowing course of conduct to falsely claim

a)    that it was delivering "one-on-one" physical therapy health services when it fact it was delivering less-costly "group" or "concurrent" services, while still billing the United States for the "one-on-one" service.

b)    that it was billing for physical therapy services under a physical therapist's provider number when the services were actually performed by physical therapy assistants without the physical therapist being physically present or readily available.

In submitting these false claims for payment, KAISER violated the Federal False Claims Act, 31 U.S.C.A. §§ 3729(a)(1), (2) and (3).

2.    KAISER'S policy resulted in the delivery of substandard physical therapy services to elderly, lower income, and military patients in violation of government health insurance program standards.  As a result of KAISER's policies to maximize revenue at the expense of quality medical service, KAISER falsely certified to government health insurance programs the physical therapy services it provided by:

a)    **violating minimum quality of care standards** by not having the physical therapist physically present or readily available while physical therapy assistants were providing services;

b)    **falsifying medical chart documentation and medical records** by certifying that "one-on-one" physical therapy was provided, while instead providing "group" or "concurrent" therapy, and by having physical therapists co-sign charts to make it appear that they were physically present or readily available, when they were not; and

c)    **falsifying billing service records** by submitting bills for "one-on-one" physical therapy, while instead providing "group" or "concurrent" therapy and by submitting bills under physical therapists' provider numbers when the physical therapist was not physically present or readily available.

3.    KAISER, as a provider of physical therapy services, knew of the requirement that Medicare only pays for "one-on-one" physical therapy when

"one-on-one" therapy is provided; that Medicare does not pay for "one-on-one" physical therapy when group or concurrent therapy is provided and that physical therapists may not bill for services rendered by physical therapy assistants while the physical therapist is not physically present or readily available.

4.    KAISER adopted as a corporate policy a directive to "up-code" its physical therapy services to improperly reflect that it was giving older Americans "one-on-one" physical therapy services.  KAISER implemented its scheme by 1) utilizing a single physical therapist who is treating multiple patients at the same time, while billing Medicare for "one-on-one" physical therapy services and 2) utilizing a single physical therapist who is not physically present to supervise one or more physical therapy assistants, but then billing the services under the physical therapist's provider number.

5.    "Up-coding" refers to a practice of billing a higher level of service than actually provided.  KAISER bills for its physical therapy services using a series of codes that reflect "direct one-on-one" services (therapist works with one patient exclusively – a high value code) instead of using a "group" code (therapist works with several patients at once – a lower value code).  This billing/coding practice can more than double the billed charges under any Medicare Fee Schedule.

6.     KAISER's scheme has allowed it to avoid and to continue to avoid providing promised services to older Americans through the submission of false claims.

7.     KAISER engages in the above schemes to maximize its profits at the expense of the health and well-being of its Medicaid, Medicare, and TRI-CARE patients.  KAISER profits from the scheme by a) obtaining government health insurance monies without conforming to program standards for the delivery of physical therapy services; b) failing to staff adequate numbers of physical therapists; and c) flagrantly ignoring appropriate documentation and billing procedures imposed by government health insurance programs and/or failing to hire adequate coding and billing personnel to comply with government insurance program requirements.

II.       **DEFENDANT KAISER**

8.     Defendant KAISER FOUNDATION HOSPITALS is a California non-profit corporation with its principal place of business and headquarters located at One Kaiser Plaza, 19th Floor, Oakland, California  94612. Defendant KAISER FOUNDATION HOSPITALS is an organization providing a service type hospital and medical care program across the United States. At all times relevant to this action, Defendant KAISER FOUNDATION HOSPITALS provided healthcare services to residents of the United States receiving their

medical coverage under the Medicare, Medicaid and TRI-CARE programs

pursuant to 42 U.S.C. 1396, *et seq.*

9. Defendant KAISER FOUNDATION HEALTH PLAN, INC. is

a California non-profit corporation with its principal place of business and

headquarters located at One Kaiser Plaza, 19th Floor, Oakland, California 94612.

Defendant KAISER FOUNDATION HEALTH PLAN, INC. is an organization

providing non-profit comprehensive, pre-paid direct service health care plans for

members of the public. At all times relevant to this action, Defendant KAISER

FOUNDATION HEALTH PLAN, INC. provided healthcare services to residents

of the United States Hawaii receiving their medical coverage under the Medicare,

Medicaid and TRI-CARE programs pursuant to 42 U.S.C. 1396, *et seq.*

10. Defendants KAISER FOUNDATION HOSPITALS and

KAISER FOUNDATION HEALTH PLAN, INC. are hereafter collectively

referred to as "KAISER".

11. KAISER owns and operates 30 hospitals and 431 medical

office buildings in nine states (California, Colorado, District of Columbia, Georgia,

Hawaii, Maryland, Ohio, Oregon, Virginia, Washington). In 2002, KAISER had

8.4 million members nationwide.

12. In 2000 KAISER had net income of $600 million and in 2001

KAISER had net income of $700 million.

III.      **PLAINTIFF/RELATOR**

13.    Plaintiff/Relator MARIA VILLARDARES KADZIELAWA is a citizen of the United States of America and resident of the City & County of Honolulu, State of Hawaii, and lives within the District of Hawaii.  At all times relevant to this action, Ms. Kadzielawa has been a Registered Nurse, with both R.N. and B.S.N. degrees.  Ms. Kadzielawa is also a Certified Professional Coder whose job responsibilities include developing, implementing and monitoring the methodology and practice of auditing medical bills subject to the Hawaii Workers' Compensation Medical Fee Schedule which is based on the Hawaii Medicare Fee Schedule and the American Medical Association Current Procedural Terminology (AMA CPT) codes.  Relator has worked in this capacity for over nine years, is very knowledgeable in AMA CPT and Medicare Reimbursement Guidelines and has served as an expert witness on coding issues in Hawaii administrative proceedings. Through her work as a Certified Professional Coder and Registered Nurse, Relator became aware of KAISER's false billing policies.

IV.       **JURISDICTION AND VENUE**

14.    This action is brought to remedy Defendant KAISER's submission of false claims to the Medicare programs in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729-33, pursuant to the *Qui Tam* provisions of that Act.

15.    This court has subject matter jurisdiction over this matter pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729-33 and pursuant to 28 U.S.C. § 1331, since these claims arise from violations of laws of the United States and related state statutes.

16.    This court has personal jurisdiction over the parties because Ms. Kadzielawa resides in and has her principal place of residence within the District of Hawaii and because Defendant KAISER conducts business within the District of Hawaii.

17.    Venue is proper within the District of Hawaii pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendant KAISER operates within the State of Hawaii and pursuant to 31 U.S.C. § 3732 because Defendant KAISER transacts business within the District of Hawaii and some of its submission of false claims occurred within the District of Hawaii.

## V.    KAISER'S PROVISION OF CERTAIN HEALTHCARE SERVICES TO MEDICARE RECIPIENTS

18.    KAISER performs services on behalf of Medicare patients under both the traditional "Fee For Service" (FFS) model and the HMO model, Medicare Plus Choice (M+C), which Kaiser started participating in 1997. Prior to 1997, Kaiser provided services on behalf of Medicare patients under the Senior Plus HMO plan.

## VI.  GOVERNMENT HEALTH INSURANCE PROGRAMS BILLED BY KAISER

### A.  MEDICARE

19.    Title XVIII of the Social Security Act, entitled "Health Insurance for the Aged and Disabled", is commonly known as "Medicare".  As part of the Social Security Amendments of 1965, the Medicare legislation established a health insurance program for aged persons to complement the retirement, survivors and disability insurance benefits under Title II of the Social Security Act.

20.    Medicare is a government financial health insurance program administered by the Center for Medicare and Medicaid Services (CMS)(formerly the Health Care Financing Administration (HCFA)) of the United States Department of Health and Human Services (DHHS).  The health insurance provided recipients under the Medicare insurance program is paid whole or in part by the United States.

21.    Medicare is designed to provide payment for individuals 65 years and older for medical services, durable medical equipment and related health items.  Medicare also makes payment for certain health services provided to additional classes of individual healthcare patients pursuant to federal regulation.

22.    Medicare consists of two primary parts: Hospital Insurance (HI), also known as "Part A", and Supplementary Medical Insurance (SMI), also known as "Part B". Part A (hospital) pays for care in a hospital, skilled nursing

9

facility, some home health care, and hospice care. Part B (medical) pays for doctor bills, and for outpatient hospital care and other medical services not covered by Part A.

23.    Medicare claims are processed by non-government organizations or agencies that contract to serve as the fiscal agent between providers and the Federal government to locally process Medicare's Part A and Part B claims. These claims processors are known as "intermediaries" (HI - Part A) and "carriers". (SMI - Part B).

**B.    MEDICAID**

24.    Title XIX of the Social Security Act of July 30, 1965 (Title 42, United States Code, § 1396, *et seq.*) established a medical assistance program known as the Medicaid program. Medicaid is a health insurance program administered by the respective states and paid for by the states and the United States government.

25.    Medicaid is designed to assist participating states in providing medical services and durable medical equipment to families with dependent children, to the aged, the mentally infirm, the blind, and to totally disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services. The assistance provided by the United States

Department of Health and Human Services to participating states, includes funding

of approximately fifty percent of each state's Medicaid costs.

### C.    TRI-CARE

26.    TRI-CARE is a government financial health insurance program

administered by the armed services for active duty military and their dependents.

The health insurance provided recipients under the TRI-CARE is paid whole or in

part by the United States.

27.    The Tri-Care program, formerly CHAMPUS, is administered

by the United States Department of Defense through its component agency,

OCHAMPUS, under the authority of 10 U.S.C. §§ 1071-1106, and provides for

care in civilian facilities for members of the Uniformed Services and their

dependents.

### VII.    MEDICARE BILLING FOR HOSPITAL AND PHYSICIAN CHARGES

28.    A health care facility such as a hospital obtains reimbursement

for Medicare medical services rendered by submitting claims through an

intermediary (Part A) or carrier (Part B).  The claims are requests to the United

States for payment of medical services rendered by the health care facility.

29.    Prior to January 1, 1999 these claims took the form of claims

for interim payments and cost reports.  After January 1, 1999 these claims were

submitted on HCFA Form 1500 (or its electronic equivalent).

11

30.    In order to request payment for facility charges incurred for treatment at a hospital, the facility submits to Medicare Form UB (Uniform Bill)-92 (Form UB-92).

31.    In order to request payment for physician charges rendered by a physician (professional fees) for treatment at a hospital the facility submits to Medicare HCFA Form 1500.

32.    CMS has adopted numeric codes that hospitals must use in submitting Form UB-92s. These are called "Revenue Codes" and refer to the type of supply or service rendered. They govern the amount of money Medicare will pay the hospital pursuant to the Medicare Payment Schedule.

33.    CMS has also adopted numeric codes that physicians must use in submitting Form 1500s. They are called "CPT Codes" and refer to the type of procedure performed. They govern the amount of money Medicare will pay the physician pursuant to the Medicare Payment Schedule.

34.    Under both the cost based and fee based reimbursement methods, Medicare payment has always been conditioned upon compliance with various regulations. Claims for services rendered in violation of those regulations are not reimbursable.

## VIII.    MEDICARE FEE FOR SERVICE AND MEDICARE PLUS CHOICE

35.    A facility such as a hospital obtains reimbursement for Medicare medical services rendered in two ways:

a)    For Medicare Fee For Service recipients the United States, using federal monies, pays as billed for eligible recipients and benefits on a fee for service schedule using the specified forms and codes; and

b)    The Medicare Plus Choice program which provides for medical services under a Health Maintenance Organization (HMO) model.

36.    The Balanced Budget Act of 1997, Public Law 105-33, added sections 1851 through 1859 to the Social Security Act and established the Medicare+Choice (M+C) Program. Its primary goal is to provide a wider range of health plan choices to Medicare beneficiaries. The options available to beneficiaries under the program include coordinated care plans, medical savings account plans, and private fee-for-service plans. Coordinated care plans leave a network of providers under contract to deliver a health benefit package that has been approved by the Centers for Medicare and Medicaid Services (Ch4S). Types of coordinated care organizations include health maintenance organizations, provider sponsored organizations, and preferred provider organizations. Beneficiaries eligible to enroll in the new M+C Plans must be entitled to Part A and enrolled in Part B.

37.    Medicare + Choice payments are made on a monthly capitated rate basis, with a fixed fee paid each month for the provision of most medical services.  Under both the fee for service and HMO/capitation based reimbursement methods, Medicare payment has always been conditioned upon compliance with various regulations.  Services provided in violation of applicable regulations are not reimbursable.

IX.        **MEDICAID BILLING FOR HOSPITAL AND PHYSICIAN CHARGES**

38.    A health care facility such as a hospital obtains reimbursement for Medicaid medical services rendered in two ways:

a)    For Medicaid Fee For Service recipients the State of Hawaii, using federal and state monies, pays as billed for eligible recipients and benefits on a fee for service schedule using the same forms and codes required by Medicaid.  Prior to August 1, 1994 KAISER serviced Medicaid recipients on a fee for service basis under the KAISER Program (KAISERpro).

b)    Med-QUEST is a Hawaii Medicaid program that provides for medical services under a Health Maintenance Organization (HMO) model.  Starting in August 1994, KAISER began a new program in which it accepted Med-QUEST recipients.  For Med-QUEST recipients, KAISER is paid a capitated amount of money per member per month and from that amount, KAISER is contractually obligated with the State of Hawaii to provide for medical services

14

according to state Medicaid reimbursement guidelines contained in the Hawaii

Medicaid Provider Manual, the benefit package and other contractual

requirements.  KAISER (and all the QUEST plans) are contractually obligated

with the State of Hawaii to regularly send their encounter data, i.e., numbers of

patients seen using the Medicare forms outlined below to Med-QUEST to

document each encounter a KAISER QUEST member has with KAISER and any

services that KAISER has outsourced.

X.      **AMERICAN MEDICAL ASSOCIATION CURRENT PROCEDURAL
        TERMINOLOGY CODING SYSTEM**

        39.    The American Medical Association provides a list of

descriptive terms and identifying codes for reporting medical services and

procedures performed by physicians and therapists, including physical medicine

and rehabilitation.  The purpose of the terminology is to provide a uniform

language that will accurately describe medical, surgical and diagnostic services and

to provide for the classification of services rendered by physicians, hospitals, and

other health care providers.

        40.    The AMA publishes the CPT (Current Procedural

Terminology), a listing of descriptive terms and identifying numeric codes, which

is a uniform way of describing medical services for both reporting and billing

purposes.  The CPT consists of several thousand, five-digit codes that describe

virtually every health care service.

41.    The AMA CPT also defines the criteria (time spent providing the service, level of decision-making, etc.) that must be met in order to qualify as a complete service under a specific code.

42.    The AMA CPT codes are used by Medicare in two ways.

43.    First, Medicare determines under what conditions the codes are to be used.    In other words, AMA CPT describes the health care procedure and assigns it a numeric code, but Medicare, Medicaid, and CHAMPUS determine how that procedure may be used for the provision of health care services.  The code thus identifies the medical services rendered by the therapist when it is reported to Medicare.

44.    Second, Medicare has established a fee schedule (Medicare Fee Schedule) that is based upon the AMA CPT codes.  The Medicare Fee Schedule specifies the amount of money that is to be paid by Medicare for a specific procedure or service based upon the AMA CPT codes and sets a fee for each CPT code.  Medicare has a slightly different Fee Schedule for every state.

XI.    **1995 REVISIONS TO AMA CPT CODES**

45.    In 1995, the American Medical Association revised some of its CPT codes, including significant revisions to the Physical Therapy and Rehabilitation codes (97010-97799).  In a publication entitled CPT Assistant, (Vol. 5, Issue 2 – Summer 1995), the AMA provided authoritative coding information on

the therapy codes. The AMA divided the Physical Therapy and Rehabilitation Codes into three sections: Modalities, Therapeutic Procedures, and Tests and Measurements.

46.    Modalities encompass physical agents applied for therapeutic purposes and include treatments such as traction, whirlpool treatment, electrical stimulation, ultrasound, hot packs, and cold packs.

47.    Therapeutic procedures encompass the application of clinical skills to attempt to improve functions and include treatments such as massage therapy, physical manipulation and exercise treatment.

48.    Tests and measurements include physical performance tests or measurements of functional capacity.

49.    The 1995 AMA CPT code changes clarified the proper coding of individual one-on-one therapy versus group therapy for Therapeutic Procedures. The 1995 changes specified that certain Therapeutic Procedures "require direct one-on-one patient contact by a physician or therapist."

50.    Therapeutic Procedures include such treatments as therapeutic exercises (97110), neuromuscular reeducation (97112), aquatic therapy (97113) and others. These various Therapeutic Procedures (coded as 97110-97139) are procedures that require the therapist to provide "direct one-on-one" patient contact (and not to attend to any other patients).

51.    For the purposes of this case, the CPT 1995 Physical Therapy and Rehabilitation code sections on Therapeutic Procedures are important to understand.

52.    Therapeutic Procedures are defined as "a manner of effecting change through the application of clinical skills and/or services that attempt to improve function." CPT Assistant, (Vol. 5, Issue 2 – Summer 1995) at 7.

53.    Therapeutic Procedures are further defined as requiring "Physician or therapist [is] required to have direct (one-on-one) patient contact."

54.    CPT Assistant, (Vol. 5, Issue 2 – Summer 1995) noted that

> The definition of therapeutic procedures was added to CPT 1995 to clarify the differences between therapeutic procedures, modalities, and tests and measurements. These procedures require direct one-on-one contact by a physician or therapist....**Therapeutic procedures are intended to be performed with one-on-one patient contact. If a provider is performing therapeutic procedures in a group of two or more individuals, only CPT code 97150 will be reported.**

Id. at 7 (emphasis added).

55.    Any therapeutic procedure that is given in a group of two or more individuals (which does not require the therapist to work exclusively with only one patient at a time) is coded under a single code number, 97510. "Group therapeutic procedures include CPT codes 97110-97139. If any of these

procedures are performed with two or more individuals, then only 97150 is reported." Id. at 8.

56.    Use of this "group" code (97150) allows the therapist to provide services to more than one patient at a time – a customary way to deliver physical therapy services to patients whose medical condition or level of improvement does not necessitate them having continuous, direct, one-on-one attention from the therapist. However, as shown below, the amount billed for "one-on-one" therapy is significantly higher than the amount billed for "group" therapy.

XII.    **IMPLICATIONS FOR MEDICARE BILLING REIMBURSEMENT FOR DIRECT ONE-ON-ONE VERSUS GROUP THERAPY**

57.    As shown above, certain of AMA CPT codes that are used to describe and bill for physical therapy services require that these services be provided on a "direct one-on-one" basis by the physical therapist. The AMA also specifies that when billing the "direct one-on-one" codes, the therapist cannot be attending to any other patients. If the therapist provides services to more than one patient at a time, the services must be billed as such using an AMA CPT code that reflects such a "group" service, specifically CPT 97150.

58.    "Direct one-on-one" services for CPT codes 97110-97139 for physical therapy are billed in 15-minute increments. The "group" code 97150 (encompassing group treatment for any of the 97110 to 97139 therapeutic

treatments) does not have an element of time and therefore covers the duration of the therapy session performed in this "group" manner. The average Medicare reimbursement for a 15-minute "direct, one-on-one" code is approximately $25.00 or $100 per hour. The average Medicare reimbursement for the "group" therapy code 97150 is approximately $25.00 per session regardless of the time spent on the group therapy. Therefore, if a therapist performed 15 minutes of "direct one-on-one" therapy with the patient and 45 minutes of "group" therapy, the service should be coded as follows: one "direct one-on-one" code at $25.00 per 15 minute segment and one "group" code, 97150 at $25.00, for a total of $50.00 for the entire service.

59.     If a health care provider improperly codes a one-hour combined "direct one-on-one" 15 minute session and 45 minutes of "group" treatment as direct "one-on-one" service, the payor, such as Medicare, would be overbilled approximately $50 per one hour session.

## XIII.    MEDICARE ADOPTION OF AMA CPT CODE CHANGES

60.     The United States Department of Health and Human Services, Health Care Financing Administration (HCFA) regulations were revised in 1995 to conform to the 1995 CPT code changes. As of 1995, all physical therapy billings were to conform to the CPT code guidelines for "one-on-one" treatment. Only if a physical therapist personally attended to a patient, that one patient only,

for the 15-minute billing segment should Medicare be billed for "one-on-one"

treatment using Codes 97110-97139. Treatment of 2 or more individuals during

any fifteen-minute segment requires billing with Code 97150 for group treatment.

**XIV.    CURRENT MEDICARE REGULATIONS ON ONE-ON-ONE THERAPY**

61.    In the American Medical Association's Current Procedural

Terminology 1999 manual, the AMA confirms that Codes 97110-97139 requires

that the "Physician or therapist [is] required to have direct (one-on-one) patient

contact." American Medical Association's Current Procedural Terminology 1999

at 380.

62.    In the American Medical Association's Current Procedural

Terminology 1999 manual, portions of which are attached as Exhibit 2, the AMA

confirms that code 97150 is the code to be used for "Therapeutic procedure(s),

group (2 or more individuals)," American Medical Association's Current

Procedural Terminology 1999 at 380.

63.    The applicable provisions of the Code of Federal Regulations

conform to the practice specified in the AMA CPT guidelines. For example, the

Code of Federal Regulations provides in 42 CFR Parts 410 and 415 guidelines that

medical care providers must follow to obtain reimbursement:

> We based the work RVUs [Relative Value Units] for
> these services on the expectation that the definition of the
> codes represents how the services will be furnished when
> billed to Medicare. For example, we expect that when 15

minutes of a service in the constant attendance category is billed, we may be confident that the provider furnished the 15 minutes of constant one-on-one attendance that is included in the definition of the code. If the provider did not furnish 15 minutes of one-on-one constant attendance, as the code is defined, he or she may not bill a code for 15 minutes of constant attendance. **If the provider is overseeing the therapy of more than one patient during a period of time, he or she must bill the code for group therapy (CPT code 97150), since he or she is not furnishing constant attendance to a single patient.**

XV.     **UPCODING OF PHYSICAL THERAPY BILLINGS**

64.     If the health care provider bills for physical therapy services using individual-service codes 97110-97139, then the services that are provided must be direct one-on-one services. If the health care provider bills for physical therapy services using individual service codes 97110-97139, but actually provides group services, that practice is known as "up-coding."

65.     "Up-coding" refers to a practice of billing a higher level of service than actually provided. As shown below, KAISER bills for its physical therapy services using a series of codes that reflect "direct one-on-one" services (therapist works with one patient exclusively – a higher value code) instead of using the required "group" code (therapist works with several patients at once – a lower value code).

66.     This billing/coding practice can more than double the billed charges under any Medicare Fee Schedule. For example, in evaluating and

22

determining how much money may be charged for a service (the RVU, or Relative Value Unit), the Centers for Medicare and Medicaid Services (CMS) assumes that a typical group physical therapy treatment involves five individuals and that the typical group session is of 45 minutes duration.  If a physical therapist gives "one-on-one" therapy to five individuals for one hour each, the physical therapist would have spent five hours in treatment and the billing would be approximately $500 ($25 per 15 minute segment per patient, or $100 per hour per patient).  If a physical therapist gives "group" therapy to five individuals for one hour, the billing would be approximately $125 ($25 per patient).

67.    Such "up-coding" is akin to a teacher billing each student for "direct one-on-one" tutoring (at $100.00 per hour) while teaching many students at the same time in a classroom setting which should have been billed at $20.00 per student per class.

XVI.    **BILLING FOR SERVICES NOT PROVIDED BY QUALIFIED PERSONNEL**

68.    The Medicare program only pays for outpatient physical therapy services that are provided by qualified personnel.  42 U.S.C. § 1395x(p); 42 C.F.R. § 485.713.  Personnel qualified to provide out patient physical therapy services are limited to licensed physical therapists and licensed physical therapy assistants who are acting under the supervision of a licensed physical therapist.  42 C.F.R. § 485.713(c).

69.    The Medicare program does not pay for physical therapy services provided by supportive personnel, such as physical therapy aides, athletic trainers, or student trainees. Supportive personnel may assist qualified physical therapists by performing services incident to physical therapy. However, supportive personnel may not provide physical therapy, regardless of the level or degree of supervision provided by a licensed physical therapist. 42 C.F.R. § 485.713 (d).

XVII.    **BILLING FOR SERVICES NOT RENDERED**

70.    HCFA Publication 9, Outpatient Therapy Manual sections 271.1(d) and 271.2 further refine the medically reasonable and necessary (i.e., skilled service) standard by reference to specific types of therapy or services and the circumstances under which they would be considered to be medically necessary. In particular, section 271.1(d)(2) states that because repetitive services required to maintain function generally do not involve complex or sophisticated physical therapy procedures and do not require the judgment and skill of a qualified physical therapist, they are not considered medically reasonable and necessary.

71.    Further, the Balanced Budget Act of 1997 provides that "[f]or claims for services submitted on or after April 1, 1998, for which the amount of payment is determined under this subsection, the claim shall include a code (or

codes) under a uniform coding system specified by the Secretary that identifies the services furnished." CMS subsequently notified all providers in a Program Memorandum that all clams would be coded in accordance with HCFA's Common Procedures Coding System (HCPCS), of which the American Medical Association's Common Procedural Terminology (CPT) codes are a key component. The CPT codes are used to describe patient services of all kinds.

72.    The CPT Codes for Physical Medicine and Rehabilitation are divided into three sections: Modalities, Therapeutic Procedures, and Tests and Measurements. The following description of therapeutic exercises appears in the CPT code manual:

> "Therapeutic Procedures.  Physician or therapist
> required to have direct (one-on-one) patient contact."

73.    The December 1999 edition of the CPT Assistant (9 CPT Assistant 11, Dec. 1999)[1] elaborated on the meaning of direct, one-on-one patient contact.

> From a CPT coding perspective,…[the Therapeutic
> Procedure code] requires **the therapist to
> maintain direct patient contact, (i.e., visual,
> verbal and/or manual contact) during the
> provision of service**. CPT code 97110 is to be
> **reported when the therapist is providing
> therapy to only one patient.**

---

[1] The CPT Assistant is published by the American Medical Association to provide explanations of CPT coding issues.

74.    Certain CPT codes describe services that require direct, one-on-one contact. These codes include CPT 97110 (therapeutic procedures), CPT 97113 (aquatic therapy), and CPT 97140 (manual therapy techniques). These services are billed in units of 15 minutes. IF a physical therapist spent one hour providing physical therapy exercise services to a patient, he or she could properly bill for 4 units of physical therapy exercise, code 97110.

## XVIII.    RELATOR'S DISCOVERY OF KAISER'S BILLING SCHEME

75.    Since starting her position in medical bill auditing, Relator has reviewed thousands of medical billings submitted by KAISER (and other health care providers) for workers compensation and automobile review for private insurance companies. This review involved assessing whether billing for workers compensation and auto patients were being submitted in accord with the applicable workers compensation guidelines, which are based on Medicare guidelines. Relator's review of KAISER medical billings involved verifying that the services billed were reflective of the actual physical therapy services rendered by KAISER. As mentioned above, the Hawaii Workers' Compensation/auto Medical Fee Schedule is based upon the American Medical Association CPT and the Hawaii Medicare Fee Schedule.

76.    In Relator's review of medical bills submitted for reimbursement to by KAISER, Relator discovered that prior to August 2002

KAISER billed for its physical therapy services almost exclusively using the direct "one-on-one" code (97110) versus the "group" CPT code (97150).

77.     Relator conducted an investigation to determine whether or not the policy that she discovered KAISER was following was proper under the AMA CPT codes and under the Hawaii Workers Compensation Fee Schedule (and hence under the Medicare Fee Schedule).

78.     Relator's investigation included Relator's personal reviews of the AMA CPT codes and verifying with the American Medical Association the proper application the CPT code for direct one-on-one physical therapy service versus group physical therapy service.

79.     On October 7, 1998, Relator received a response to a written inquiry Relator submitted to the American Medical Association CPT Information Services that stated as follows:

> [G]roup therapeutic procedures include CPT codes 97110-97139.  If any of these procedures are performed with two or more individuals, then only code 97150, Therapeutic procedure(s), group (2 or more individuals), is reported.  The specific type of therapy from the code range 97110-97139 would not be reported in addition to the group therapy code.  Thus, if two patients were performing exercise therapy…the correct code to report would be 97150.  Code 97110 would not be reported since two patients are being treated.

October 7, 1998 letter from Joan Zacharisa, Health Information Specialist to Maria Villadares (Kadzielawa)

80. In response to Relator's inquiry, the AMA also confirmed that "'direct (one-on-one)' and 'supervised' are *not* synonymous. The term 'direct' is defined under Constant Attendance on page 380 of the 1998 CPT book in the Physical Medicine and Rehabilitation section. It is defined as requiring one-on-one patient contact by the provider. Supervised modalities do not require (one-on-one) patient contact by the provider." October 7, 1998 letter from Joan Zacharisa, Health Information Specialist to Maria Villadares (Kadzielawa) (italics in original)

81. Through Relator's research, Relator verified and confirmed that certain of AMA CPT codes used to describe and bill for physical therapy require that said services be provided on a "direct one-on-one" basis by the therapist. Relator also confirmed that under the AMA CPT guidelines when billing the "direct one-on-one" codes, the therapist cannot be attending to any other patients. If the therapist provides services to more than one patient at a time, the services must be billed as such using an AMA CPT code that reflects such a "group" service, specifically CPT 97150. "Direct one-on-one" CPT codes (97110-97139) are billed in 15-minute increments. The "group" code 97150, does not have an element of time, therefore, covers the duration of the therapy session performed in this "group" manner. The average Medicare reimbursement for a 15-minute "direct one-on-one" code is approximately $25.00. The average Medicare reimbursement for the "group" therapy code 97150 is approximately $25.00.

Therefore, if a therapist performed 15 minutes of "direct one-on-one" therapy with the patient and 45 minutes of "group" therapy, the service should be coded as follows: one "direct one-on-one" code at $25.00 and the "group" code, 97150 at $25.00, for a total of $50.00 for the entire service.

      82.    In Relator's review of KAISER billings, she also discovered that KAISER almost exclusively bills for one hour of physical therapy services using four 15 minute – "direct one-on-one" codes or approximately $100.00. Therefore, in the example mentioned above, KAISER "up-coded" the bill to double its reimbursement .

      83.    Relator's investigation revealed practices which KAISER appears to engage in on a regular basis which constitute false or fraudulent Medicare billings by upcoding of services:

      A.    KAISER billed for its therapy services almost exclusively using the "direct one-on-one" codes (97110-97139) vs. the "group" CPT code 97150;

      B.    KAISER billed for services provided by supportive personnel;

      C.    KAISER billed for physical therapy services that were not provided;

D.    KAISER does not appear to differentiate between the "direct one-on-one" codes vs. the "group" code in its billing policy and written statements;

E.    KAISER conducts its physical therapy operations by having one physical therapist attend to multiple patients while billing at the higher one-on-one rate, thus, in the course of one hour, each physical therapist or physical therapy assistant would bill for two hours or more of direct, one-on-one therapy; and

F.    KAISER allows physical therapy assistants to treat patients without the physical therapist being physically present or readily available.

XIX.    **CLAIMS FOR RELIEF**

84.    Plaintiff realleges and by reference herein incorporates the allegations contained above as if fully set forth herein.

85.    At all times relevant to this Complaint, it is a violation of 31 U.S.C. § 3729(a)(1) to submit, or cause to be submitted, a false or fraudulent claim for payments or approval by Medicare, Medicaid or TRI-CARE.

86.    At all times relevant to this Complaint, it is a violation of 31 U.S.C. § 3729(a)(2) to make, or cause to be made or used, a false record or

statement to get a false or fraudulent claim paid or approved by Medicare, Medicaid or TRI-CARE.

87.    At all times relevant to this Complaint, it is a violation of 31 U.S.C. § 3729(a)(3) to conspire to bill Medicare, Medicaid or TRI-CARE by causing a false or fraudulent claim to be allowed or paid.

88.    Defendants KAISER FOUNDATION HOSPITALS, KAISER FOUNDATION HEALTH PLAN, INC. and HAWAII PERMANENTE MEDICAL GROUP, INC. and their relationships to, agreements with, and inter-related conduct with each other form an integral part of the fraudulent schemes described above in violation of 31 U.S.C. §§ 3729-33 which give rise to this action.  Furthermore, Plaintiff is informed and believes and therefore alleges that Defendants KAISER FOUNDATION HOSPITALS, KAISER FOUNDATION HEALTH PLAN, INC. and HAWAII PERMANENTE MEDICAL GROUP, INC. have engaged or assisted, and continue to engage and assist in the submission of fraudulent claims to Medicare, Medicaid and TRI-CARE, in violation of 31 U.S.C. §§ 3729-33.

89.    *Qui Tam* Plaintiff believes and therefore alleges that all of the various schemes to falsely bill the Medicare, Medicaid and TRI-CARE programs through the submission of false claims detailed in this action were designed, instigated, facilitated and implemented by Defendant KAISER.

90.    *Qui Tam* Plaintiff believes and therefore alleges that Defendant KAISER, by and through their corporate headquarters, have engaged in wide ranging and long standing schemes to falsely billed Medicare, Medicaid and TRI-CARE and, in doing so, the State of Hawaii and the United States government.

91.    By engaging in the conduct described hereinabove, Defendant KAISER has knowingly presented numerous false and fraudulent claims for payment by Medicare, Medicaid and TRI-CARE and accepted payments for services from federal monies that they had no legal right to obtain.

92.    By virtue of the acts described above, Defendant Kaiser has knowingly submitted, or caused to be submitted, and is continuing to submit, to officers, employees, or agents of the United States government, numerous false or fraudulent claims for payments.

93.    By virtue of the acts described herein, Defendant KAISER has made, used, or caused to be made or used, a false record or statement to enable a false or fraudulent claim to be paid or approved by the government.

94.    By virtue of the acts described above, Defendant KAISER has conspired cause a false or fraudulent claim to be allowed or paid to Medicare, Medicaid and TRI-CARE.

95.    Defendant KAISER in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, presented or caused to

be presented, and may still be presenting, to Medicare, Medicaid and CHAMPUS false or fraudulent claims for payment, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(1).

96.    Defendant KAISER in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, caused or caused to be used, and may still be using or causing to be used, false or fraudulent records or statements to get false or fraudulent claims paid or approved, in violation of, *inter alia*, 31 U.S.C. § 3729(a)(2).

97.    Defendant KAISER in reckless disregard or deliberate ignorance of the truth or falsity of the information which would support claims to Medicare, Medicaid or CHAMPUS or with actual knowledge of the falsity of the information that supported these claims, conspired to cause a false or fraudulent claim to be allowed or paid in violation of, *inter alia*, 31 U.S.C. § 3729(a)(3).

98.    The State of Hawaii and the United States, previously unaware of the falsity of the claims and/or statements made by Defendant KAISER and in reliance on the accuracy of these claims and/or statements, paid and may continue to pay for healthcare services to Medicare, Medicaid and CHAMPUS recipients.

99.    As a result of the actions of Defendant KAISER the United States has been, and may continue to be, severely damaged.

WHEREFORE, *Qui Tam* Plaintiff and the State of Hawaii pray for judgment against Defendant KAISER, as follows:

A.    That Defendant KAISER be ordered to cease and desist from submitting any more false claims for violating 31 U.S.C. § 3729;

B.    That Defendant KAISER be assessed damages in the amount of each and every false or fraudulent claim multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than Five Thousand Five Hundred and No/100 Dollars ($5,500.00) or more than Eleven Thousand and No/100 Dollars ($11,000.00) per claim as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the State of Hawaii for losses resulting from the various schemes undertaken by Defendant KAISER and  together with penalties for specific claims to be identified at trial after full discovery;

C.    That *Qui Tam* Plaintiff be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(b);

D.    That judgment be granted for *Qui Tam* Plaintiff and the State of Hawaii and against Defendant KAISER and for any costs, including, but not limited to, court costs, expert fees, investigative expenses and all attorneys' fees incurred by *Qui Tam* Plaintiff in the prosecution of this suit;

E.    That *Qui Tam* Plaintiff and the United States be granted such other and further relief as the court deems proper; and

**F.**    That *Qui Tam* Plaintiff and the United States be granted the specific equitable relief prayed for herein.

Dated:  Honolulu, Hawai`i, November 18, 2003.

THOMAS R. GRANDE
Co-counsel for *Qui Tam* Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MARIA VILLADARES KADZIELAWA, | CIVIL NO. (Other Civil Action/*Qui Tam*) |
| Relator/Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| KAISER FOUNDATION HOSPITALS and KAISER FOUNDATION HEALTH PLAN, INC., | |
| Defendants. | |

## **DEMAND FOR JURY TRIAL**

Plaintiff above-named, by and through her attorneys, DAVIS LEVIN

LIVINGSTON GRANDE, hereby requests trial by jury in the above-entitled matter.

DATED:  Honolulu, Hawaii, November 18, 2003.

THOMAS R. GRANDE
Co-counsel for *Qui Tam* Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MARIA VILLADARES KADZIELAWA,<br><br>Relator/Plaintiff,<br><br>vs.<br><br>KAISER FOUNDATION HOSPITALS and KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendants. | CIVIL No.<br>(Other Civil Action/*Qui Tam*)<br><br>**SUMMONS TO ANSWER COMPLAINT** |

## SUMMONS TO ANSWER COMPLAINT

KAISER FOUNDATION HOSPITALS and
KAISER FOUNDATION HEALTH PLAN, INC.

To the above-named Defendants:

You are hereby summoned and required to serve upon Plaintiff's attorney, whose address is **DAVIS LEVIN LIVINGSTON GRANDE, 851 Fort Street, 4th Floor, Honolulu, Hawaii 96813-4317,** an answer to the Complaint which is attached. This action must be taken within **twenty (20) days** after service of this summons upon you, exclusive of the day of service. If you fail to make your answer within the twenty (20) day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

DATED:  Honolulu, Hawaii    ~~DEC  4 2003~~ NOV 1 8 2003

WALTER A.Y.H. CHINN

CLERK OF THE ABOVE-ENTITLED COURT

Deputy Clerk, United States
District Court, District of Hawaii

2